IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

GREGORY LOYD,                          )
                                       )
                    Plaintiff,         )
                                       )
        v.                             )        Case No. CIV-17-977-D
                                       )
PAUL SALAZAR d/b/a RAS TRUCKING,       )
*et al*.,                              )
                                       )
                    Defendants.        )

## ORDER

Before the Court is Defendant AG Source, Inc.'s Motion to Dismiss Plaintiff's

Amended Complaint [Doc. No. 44], filed pursuant to Fed. R. Civ. P. 12(b)(6).[1]  Plaintiff

has filed a timely response [Doc. No. 45] and Defendant has replied [Doc. No. 46].  Both

parties have filed notices of supplemental authority [Doc. Nos. 49, 50, 51, 52].[2]  The

Motion is fully briefed and at issue.

Plaintiff brings a common law negligence action to recover damages for personal

injuries suffered in a motor vehicle accident.  Defendant AG Source, Inc. ("AGS") is a

freight broker who allegedly selected an unsafe motor carrier, Defendant Paul Salazar d/b/a

RAS Trucking, to transport property, and the carrier's employee allegedly caused the

---

[1]  In granting Plaintiff leave to amend his pleading to add AG Source, Inc. as a defendant,
the Court expressly deferred a decision regarding the sufficiency of the Amended Complaint for
an appropriate motion under Rule 12(b)(6).  *See* 7/9/18 Order [Doc. No. 32] at 4.

[2]  Although these Notices are authorized by LCvR7.1(m), Plaintiff included in his Notices
additional legal argument.  To the extent Plaintiff's filings constitute unauthorized supplemental
briefs, they are disregarded; only the information permitted by LCvR7.1(m) will be considered.

trucking accident that injured Plaintiff. AGS asserts that two federal statutes preempt any negligence claim based on its brokerage services: the Interstate Commerce Commission Termination Act (ICCTA), 49 U.S.C. § 14501(b); and the Federal Aviation Administration Authorization Act (FAAAA), 49 U.S.C. § 14501(c).

## Standard of Decision

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); *see Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. By its Motion, AGS does not challenge the sufficiency of Plaintiff's factual allegations to state a negligence claim but, instead, raises a legal challenge based on the doctrine of federal preemption. The legal sufficiency of a complaint is properly decided under Rule 12(b)(6), and federal preemption is a legal issue. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (Rule 12(b)(6)); *Scarlett v. Air Methods Corp.*, 922 F.3d 1053, 1061 (10th Cir. 2019) (preemption). "The party claiming preemption bears the burden of showing with specificity that Congress intended to preempt state law." *Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 489 n.4 (10th Cir. 1998) (citing *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 255 (1984)); *see Cook v. Rockwell Int'l Corp.*, 618 F.3d 1127, 1143 (10th Cir. 2010).

**Plaintiff's Allegations**

The Amended Complaint states that Plaintiff (an Oklahoma citizen) was severely injured in a highway accident involving a semitrailer-tractor truck operated by Defendant Robiet Leon Carrazana (a Texas citizen) while employed by Defendant Salazar (a Texas citizen), whose sole proprietorship was a licensed motor carrier, U.S. DOT No. 2354708. According to Plaintiff, "Carrazana was transporting freight brokered to Salazar by [AGS]," and AGS (a Kansas citizen) is a licensed freight broker, U.S. DOT No. 228140 (MC No. 413830). *See* Am. Compl. [Doc. No. 33] ¶¶ 4, 8. "Prior to [AGS] brokering the load to Salazar, the U.S. Department of Transportation assigned Salazar a 'Conditional' rating as a motor carrier due to serious violations, including hours of service violations, record retention violations, and operating without required authority." *Id*. ¶ 9.

Plaintiff asserts as his "Fourth Cause of Action" a claim against AGS of "Negligent Hiring of a Motor Carrier/Negligent Brokering." *Id*. at 4 (ECF page numbering). Plaintiff alleges that AGS "is a freight broker whose enterprise involves selecting motor carriers as an integral part of its business" and it "owed a duty to the motoring public to select a competent motor carrier to haul the load Carrazana was transporting at the time of the accident." *Id*. ¶¶ 24-25. According to Plaintiff, AGS "knew or should have known that Salazar was an unsafe motor carrier, and that Salazar utilized incompetent, unsafe, and careless drivers – such as Carrazana – and Salazar regularly entrusted its vehicles to such drivers." *Id.* ¶ 26. Specifically, AGS "negligently, recklessly, and/or intentionally ignored Salazar's repeated unlawful and unsafe conduct, including – but, not limited to – hours of service violations and operating commercial motor vehicles unsafely." *Id*. ¶ 27. Plaintiff

claims that AGS's "negligent hiring of Salazar by entrusting the freight to Salazar constitutes gross negligence or amounts to the wanton and reckless disregard of the rights and safety of Loyd, entitling him to both compensatory and exemplary damages." *Id.* ¶ 28.

## Discussion

By its Motion, AGS raises a claim of "express preemption, which occurs when the language of the federal statute reveals an express congressional intent to preempt state law." *See Mount Olivet Cemetery Ass'n v. Salt Lake City*, 164 F.3d 480, 486 (10th Cir. 1998); *see also US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1324 (10th Cir. 2010). The parties' arguments regarding this claim present three legal issues: 1) Whether Plaintiff's negligent brokering claim is preempted by the ITTCA, § 14501(b); 2) Whether the claim is preempted by the FAAAA, § 14501(c)(1); and if so, 3) Whether the claim is saved from preemption by a provision excepting state safety laws, § 14501(c)(2).

## A.     ITTCA Preemption

As part of a change in federal regulatory policy toward the transportation industry, Congress passed statutes that deregulated trucking and prevented states from imposing their own regulations. As pertinent here, the ITTCA includes the following provision:

> (b) Freight forwarders and brokers.--
>
> > (1) General rule. -- Subject to paragraph (2) of this subsection [regarding Hawaii], no State or political subdivision thereof and no intrastate agency . . . shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to intrastate rates, intrastate routes, or intrastate services of any freight forwarder or broker.

49 U.S.C. § 14501(b)(1). AGS asserts that this provision protects it from state common law claims that are based on its performance of services as a freight broker.

4

According to the Supreme Court, "[t]he [preemption] question, at bottom, is one of statutory intent, and we accordingly begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Morales v. Trans World Airlines, Inc*., 504 U.S. 374, 383 (1992) (internal quotations omitted). By its terms, the ITTCA preempts state laws "relating to *intrastate* rates, *intrastate* routes, or *intrastate* services of any freight forwarder or broker." *Id*. (emphasis added). AGS's preemption argument regarding this statute necessarily requires that the Court either disregard this language and extend it to *interstate* services of a freight broker, or find that AGS was performing *intrastate* services when it brokered the freight shipment in this case. *See* Reply Br. at 2-3.

Upon consideration, the Court finds that AGS's first argument is contrary to the Supreme Court's teaching: "Where, as in this case, Congress has superseded state [laws] by statute, our task is to identify the domain expressly preempted. To do so, we first focus on the statutory language, which necessarily contains the best evidence of Congress' preemptive intent." *See Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013) (internal quotations omitted). Unlike other provisions of 49 U.S.C. § 14501 – a statute regarding "Federal authority over intrastate transportation" – § 14501(b)(1) expressly limits its reach to "intrastate" rates, routes, and services. The Court views this limitation as a statement of congressional intent to preempt state laws relating only to intrastate services of a broker under § 14501(b)(1).[3]

---

[3] Other parts of § 14501 are not so limited. For example, the provision applicable to motor carriers of passengers preempts state laws relating to "scheduling of interstate or intrastate

5

Turning to AGS's intrastate services argument, the Court finds that it is unsupported by the allegations of the Amended Complaint. Plaintiff has not included in his pleading any facts that would identify the nature of AGS's brokerage services as either intrastate or interstate in nature. Plaintiff argues that they necessarily were interstate because the motor carrier, Salazar (acting through Carrazana), was transporting a freight shipment between two states. *See* Pl.'s Resp. Br. at 2, 4.[4] AGS urges the Court to focus on the brokerage services themselves, and although not well articulated, AGS seems to argue that the services were performed within the state where AGS was located. *See* Reply Br. at 2. AGS presents no authority for any presumption or rule that a broker's services are locally performed. According to pertinent facts shown by the Amended Complaint (and not disputed by any defendant), AGS and the motor carrier selected for the shipment, Salazar, were located in different states, thus suggesting an interstate brokering transaction.

In short, the Court finds that AGS has failed to carry its burden to show that Plaintiff's negligence claim against it is preempted by § 14501(b).

**B.     FAAAA Preemption**

Congress enacted the FAAAA to protect freight shipments from state regulations as follows:

> (c)  Motor carriers of property.  (1) General rule. – Except as provided in
> paragraphs (2) and (3), a State . . . may not enact or enforce a law, regulation,

---

transportation" and "the authority to provide intrastate or interstate charter bus transportation." *See id.* § 14501(a)(1)(A), (C).

[4]  Plaintiff admits the fact of an interstate freight shipment is not shown by the Amended Complaint, but he contends the omission was inadvertent and could be cured by an amendment. *See* Pl.'s Resp. Br. at 4 n.1.

or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

(2) Matters not covered. – Paragraph (1) –

(A) shall not restrict the safety regulatory authority of a State with respect to motor vehicles, the authority of a State to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo, or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization.

49 U.S.C. § 14501(c). Due to parallel language in the statutes, courts follow caselaw interpreting the Airline Deregulation Act (ADA), 49 U.S.C. § 1305(a)(1), to determine the scope of the FAAAA. *See Rowe v. N.H. Motor Trans. Ass'n*, 552 U.S. 364, 370 (2008); *Dan's City Used Cars*, 569 U.S. at 260.

Congress' use of words "related to" a price, route, or service expresses a broad preemptive purpose "and embraces state laws 'having a connection with or reference to' carrier [or broker] 'rates, routes, or services,' whether directly or indirectly." *See Dan's City Used Cars*, 569 U.S. at 260 (quoting *Rowe*, 552 U.S. at 370 (internal quotation omitted)). "At the same time, the breadth of the words 'related to' does not mean the sky is the limit." *Id*. The Supreme Court has "cautioned that § 14501(c)(1) does not preempt state laws affecting carrier prices, routes, and services in only a tenuous, remote, or peripheral manner." *Id*. at 261 (internal quotation omitted).

Federal district courts are sharply divided on how to apply these guiding principles to personal injury claims alleging negligence by brokers in selecting motor carriers for the

transportation of property.[5] There is no question that a common law negligence claim embodies a state law that may be preempted under proper circumstances. *See Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 281-82 (2014) ("[S]tate common-law rules fall comfortably within the language of the ADA pre-emption provision" because it "applies to state 'law[s], regulation[s], or other provision[s] having the force and effect of law,'" and "[i]t is routine to call common-law rules 'provisions.'") (quoting 49 U.S.C. § 41713(b)(1)). The difficulty is "draw[ing] a line between laws that are significantly 'related to' rates, routes, or services, even indirectly, and thus are preempted, and those that have 'only a tenuous, remote, or peripheral' connection to rates, routes, or services, and thus are not preempted." *See Dilts v. Penske Logistics, LLC*, 769 F.3d 637 643 (9th Cir. 2014) (citing *Rowe*, 552 U.S. at 371).

Some district courts have simply refused to hold that personal injury claims are preempted, largely relying on ADA cases to justify such a rule. *See*, *e.g.*, *Scott v. Milosevic*, 372 F. Supp. 3d 758, 769 (N.D. Iowa 2019) (citing *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1266 (9th Cir. 1998) (en banc) (Congress enacted the ADA to insulate the airline industry from state economic regulation; "[i]t did not intend to immunize the airlines from liability for personal injuries caused by their tortious conduct")); *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 338 (5th Cir. 1995) (en banc) ("[N]either the ADA nor its legislative history indicates that Congress intended to displace the application of state tort

---

[5] No federal appellate court has yet decided this question, but the issue may be presented in pending appeals. *See Creagan v. Wal-Mart Trans., LLC*, 354 F. Supp. 3d 808 (N.D. Ohio 2018), *appeal filed*, No. 19-3562 (6th Cir. June 12, 2019); *Miller v. C.H. Robinsons Worldwide, Inc.*, Case No. 3:17-cv-00408-MMD-WGC (D. Nev. Nov. 14, 2018), *appeal filed*, No. 19-15981 (9th Cir. May 7, 2019).

law to personal physical injury inflicted by aircraft operations, or that Congress even considered such preemption.") (footnote omitted)).  This rule is supported by broad statements of opinion that, in enacting the ADA, "Congress did not intend to preempt passengers' run-of-the-mill personal injury claims." *Charas*, 160 F.3d at 1261.[6]

In *Charas*, the conclusion flowed from narrowly construing the term "service" of an air carrier to encompass "such things as the frequency and scheduling of transportation" but to exclude passenger services such as "the dispensing of food and drinks, flight attendant assistance, or the like." *Id*. at 1265-66.[7]  Other opinions reflect a more nuanced approach, defining the term "services" of air carriers broadly to "include items such as ticketing, boarding procedures, provision of food and drink, and baggage handling" but concluding that "enforcement of tort remedies for personal physical injury ordinarily has no 'express reference' to services as defined above." *See Hodges*, 44 F.3d at 339 (citing

_____

[6] Some of the district court decisions cited by Plaintiff were made by courts located within the Ninth Circuit and follow *Charas* or a subsequent decision, *Dilts*.  *See Nyswaner v. C.H. Robinson Worldwide Inc*., 353 F. Supp. 3d 892 (D. Ariz. 2019); *Factory Mut. Ins. Co. v. One Source Logistics, LLC*, Case No. LA CV16-06385 JAK, 2017 WL 2608867 (C.D. Cal. May 5, 2017); *Montes de Oca v. El Paso-Los Angeles Limousine Express, Inc*., No. CV-14-9230 RSWL, 2015 WL 1250139 (C.D. Cal. March 17, 2015).  Plaintiff cites a case outside the Ninth Circuit, *Hentz v. Kimball Trans., Inc*., Case No. 6:18-cv-1327-Orl-31GJK, 2018 WL 5961732 (M.D. Fla. Nov. 14, 2018), which concerned a different issue (complete preemption) but also cited *Charas* and *Hodges*.  Other district courts adopting this view have also followed ADA caselaw, or have followed FAAAA cases citing ADA caselaw, without analysis.  *See Owens v. Anthony*, No. 2-11-0033, 2011 WL 6056409, * 3 (M.D. Tenn. Dec. 6, 2011); *Mann v. C.H. Robinson Worldwide, Inc*., No. 7:16-cv-00102, 2017 WL 3191516, *7-8 (W.D. Va. July 27, 2017); *Gilley v. C.H. Robinson Worldwide, Inc*., Civ. Action No. 1:18-00536, 2019 WL 1410902, *5 (S.D. W.Va. March 28, 2019).

[7] The Third Circuit has endorsed "[t]he approach espoused . . . in *Charas*." *See Taj Mahal Travel, Inc. v. Delta Airlines, Inc*., 164 F.3d 186, 194 (3d Cir. 1998).

*Morales*, 504 U.S. at 388).[8]  Many court opinions regarding the preemptive reach of the ADA are influenced by a provision requiring air carriers to maintain insurance coverage for personal injury claims.  *See*, *e.g.*, *Hodges*, 44 F.3d at 338; *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 194 (3d Cir. 1998); *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1258 (11th Cir. 2003); *see also Bower v. Egyptair Airlines, Co.*, 731 F.3d 85, 95 (1st Cir. 2013): *Scott*, 372 F. Supp. 3d at 770.  A similar provision exists under the FAAAA for motor carriers and freight forwarders, but not brokers.  *See* 49 U.S.C. § 13906(a)(1), (b)(1)-(2), (c)(3).  Therefore, under the circumstances of this case, the Court finds little guidance in these opinions, which address neither the "services" of brokers nor Congress' intent regarding brokers.

More persuasive to the Court are cases that focus on the language of § 14501(c)(1) and the factual allegations of a plaintiff's negligence claim.  With few exceptions, the conclusions reached by district courts conducting an express preemption analysis are that the "services" of a freight broker involve arranging for a motor carrier to transport property and that a state-law negligent brokering claim is directly "related to" the broker's performance of this service with respect to the transportation of property.[9]  *See*, *e.g.*, *Finley*

_____

[8]  The First, Second, Fourth, Seventh and Eleventh Circuits have adopted the *Hodges* approach.  *See Bower v. Egyptair Airlines Co.*, 731 F.3d 85, 94-95 (1st Cir. 2013); *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008); *Smith v. Comair, Inc.*, 134 F.3d 254, 259 (4th Cir. 1998); *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996); *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1257 (11th Cir. 2003).

[9]  *See* 49 U.S.C. § 13102(2) ("broker" means a person "selling, providing, or arranging for, transportation by motor carrier for compensation"), § 13102(23) ("transportation" includes "a motor vehicle . . . or equipment of any kind related to the movement of passengers or property"

10

*v. Dyer*, No. 3:18-CV-78-DMB-JMV, 2018 WL 5284616 (N.D. Miss. Oct. 24, 2018)

(negligent hiring and entrustment claims against freight broker "derive from a broker's

service" and so "are 'related to' such service" and preempted by § 14501(c)(1));[10] *Creagan*

*v. Wal-Mart Trans., LLC*, 354 F. Supp. 3d 808, 813 (N.D. Ohio 2018), *appeal filed*, No. 19-

3562 (6th Cir. June 12, 2019) ("because the negligent hiring claim seeks to enforce a duty

of care related to how Kirsch (the broker) arranged for a motor carrier to transport the

shipment (the service), the claim falls squarely within the preemption of [§ 14501(c)(1)]");

*Miller v. C.H. Robinson Worldwide, Inc.*, Case No. 3:17-cv-00508-MMD-WGC, 2018 WL

5981840, *4 (D. Nev. Nov. 14, 2018), *appeal filed*, No. 19-15981 (9th Cir. May 7, 2019)

(negligent brokering claim is preempted under § 14501(c)(1) because imposing liability

"would have a significant impact on [freight broker's] services as a broker;" the claim "sets

out to reshape the level of service a broker must provide in selecting a motor carrier to

transport property"); *Krauss v. IRIS USA, Inc.*, Civil Action No. 17-778, 2018 WL

2063839, *5 (E.D. Pa. May 3, 2018) (negligent hiring allegations against freight broker

"go to the core of what it means to be a careful broker" so the claim is preempted by

§ 14501(c)(1)); *Volkova v. C.H. Robinson Co.*, No. 16 C 1883, 2018 WL 741441 (N.D. Ill.

Feb. 7, 2018) (negligent hiring claim "directly implicates how [freight broker] performs its

_____

and "services related to that movement, including arranging for, receipt, delivery, . . . and
interchange of passengers and property").

[10] Plaintiff relies on *Finley* as supplemental authority in his favor due to the district court's
treatment of the exception of § 14501(c)(2), discussed *infra*. *See* Pl.'s Notice [Doc. No. 49].

central function of hiring motor carriers, which involves the transportation of property" and is preempted by § 14501(c)(1)).

In this case, Plaintiff claims that AGS is liable for his injuries based on its "negligent hiring of Salazar" as the motor carrier for the freight shipment that Carrazana was hauling. *See* Am. Compl. ¶ 28. Plaintiff specifically alleges AGS was a freight broker that "select[ed] motor carriers as an integral part of its business," that it "owed a duty to the motoring public to select a competent motor carrier to haul the load Carrazana was transporting at the time of the accident," and that it breached this duty by selecting an unsafe motor carrier (Salazar) to transport the shipment. *See* Am. Compl. ¶¶ 24-27. The Court finds that Plaintiff's allegations directly relate to the services AGS provided as a broker in the transportation of property. Thus, Plaintiff's claim is expressly preempted by § 14501(c)(1) of the FAAAA.

## C. FAAAA's Safety Exception

A state law may be saved from preemption if it falls within an exception provided by § 14501(c)(2), quoted *infra*. As pertinent here, this exception protects a state's "safety regulatory authority . . . with respect to motor vehicles." 49 U.S.C. § 14501(c)(2). Plaintiff argues that this provision should be read broadly to encompass a negligent brokering claim where, as here, it would serve to protect the motoring public from unsafe motor carriers.

Plaintiff's position has some support among district courts that have considered the safety exception of § 14501(c)(2), but most of these courts have simply made a conclusory finding without statutory analysis, such as, "the negligence issues presented here involve highway safety." *See Owens*, 2011 WL 6056409 at 4; *see also Morales*, 2015 WL 9274068

at *3 ("agree[ing] with *Owens* that negligence claims like the ones here are part of the states' safety regulatory authority"); *Mann*, 2017 WL 3191516 at 7 (even if negligent hiring claim "had a sufficient impact on the price, route, or service of a broker to satisfy Paragraph (1), it would not be preempted because it would fall within the general 'safety regulatory' exception of Paragraph 2(A)"); *Gilley*, 2019 WL 1410902 at *5 (same). Some courts reaching an opposite conclusion have also given cursory treatment to the issue. *See Volkova*, 2018 WL 741441 at *4 (finding plaintiff's reliance on § 14501(c)(2) was not persuasive and quoting the provision with emphasis on "safety *regulatory* authority of a State with respect to *motor vehicles*"); *Creagan*, 354 F. Supp. 3d at 814 (concluding negligent hiring claim "is not within the safety regulatory authority of the state" because it "seeks to impose a duty on the service of the broker rather than regulate motor vehicles"). Even district court decisions that do articulate an analysis have reached different conclusions. *Compare Miller*, 2018 WL 5981840 at *4-5, *with Finley*, 2018 WL 5284616 at *6.

A number exceptions are listed in § 14501(c), after the preemption provision of subsection (c)(1), that describe matters reserved for state authority. Subsection (c)(3) speaks to "state standard transportation practices," such as uniform cargo liability rules and bills of lading, "with respect to the intrastate transportation of property by motor carriers" if they meet certain requirements, including being "no more burdensome than" federal regulations covering the same subject matter and "only appl[ying] to a carrier upon request of such carrier." *See* 15 U.S.C. § 14501(c)(3)(B). Subsection (c)(2) enumerates particular matters, stating categorically that subsection (c)(1) "does not apply to the intrastate

transportation of household goods" or state laws "relating to the price of for-hire motor vehicle transportation by a tow truck." *See* 49 U.S.C. § 14501(c)(2)(B) and (C). The provision at issue in this case appears in subsection (c)(2)(A), which declares that subsection (c)(1) "shall not restrict . . . the authority of the State" in three areas: safety regulations with respect to motor vehicles; highway route controls or limitations based on the size or weight of the motor vehicle or hazardous nature of the cargo; and motor carrier regulations regarding minimum amounts of financial responsibility relating to insurance. Thus, Congress provides in § 14501(c) a set of carefully drafted exceptions to the broad preemptive sweep of subsection (c)(1).

In contrast to specific exceptions, Plaintiff proposes that "safety regulatory authority of a State with respect to motor vehicles" should encompass a negligent brokering claim, like his, that implicates highway safety. In the Court's view, Plaintiff's proposal is contrary to Congress' intent in providing specific exceptions to federal preemption; such a broad reading would allow the exception to swallow the rule of preemption related to brokers' services.

Congress expressly limited the exception by specifying that protected safety regulations are ones "with respect to motor vehicles." The phrase "with respect to" signals that an exempt regulation must concern motor vehicles, and narrows the scope of the exception. *See Dan's City Used Cars*, 569 U.S. at 261 (FAAAA limited the parallel ADA preemption provision by adding "with respect to transportation of property"). "The term 'motor vehicle' means a vehicle, machine, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway in transportation . . . ." *See* 49 U.S.C.

14

§ 13102(16). Assuming that a common law negligence claim can be considered a safety regulation with respect to motor vehicles, a negligent hiring or brokering claim – even one alleging that a broker unreasonably selected an unsafe motor carrier – only indirectly concerns the safety of the motor vehicles owned or operated by the motor carrier.

In reaching this conclusion, the Court is mindful of the Supreme Court's teaching in *City of Columbus v. Ours Garage and Wrecker Service, Inc.*, 536 U.S. 424, 440 (2002), that "[a] congressional decision to enact both a general policy that furthers a particular goal [of deregulation] and a specific exception that might tend against that goal does not invariably call for the narrowest possible construction of the exception." In *Ours Garage*, the Supreme Court addressed the safety exception of § 14501(c)(2)(A) in a different context; the question presented was whether the exception preserved local as well state safety regulations. The Court found that the expressed intent of the exception is "that the preemption rule of § 14501(c)(1) 'not restrict' the *existing* 'safety regulatory authority of a State" and that it "seeks to save from preemption state power in a field which the States have traditionally occupied." *Id*. at 438 (emphasis in original) (internal quotation omitted). In finding that the exception covered local regulations, the Supreme Court observed that the field of safety is one "where States have traditionally allowed localities to address local concerns," and reasoned as follows:

> Congress' clear purpose in § 14501(c)(2)(A) is to ensure that its preemption of States' economic authority over motor carriers of property, § 14501(c)(1), "not restrict" the preexisting and traditional state police power over safety. That power typically includes the choice to delegate the State's "safety

regulatory authority" to localities. Forcing a State to refrain from doing so would effectively "restrict" that very authority.

*Id*. at 439-40.

Following *Ours Garage*, district courts have disagreed on whether a common law negligence claim falls within a state's traditional police power over safety. *See Finley*, 2018 WL 5284616 at *6 (common law liability is traditional exercise of police power); *Miller*, 2018 WL 5981840 at *4 (private action does not enforce state police power). This Court is willing to assume that a state-law tort claim imposing a common law duty on a freight broker might be viewed as an exercise of a state's police power and, under proper circumstances, a negligent brokering claim might be viewed as safety regulation. The Court finds, however, that reading the safety exception to include a negligence claim like the one asserted here – alleging that AGS overlooked Salazar's "conditional" rating as a motor carrier and selected an unsafe motor carrier that used incompetent or careless drivers and entrusted its vehicles to such drivers (*see* Am. Compl. ¶¶ 9, 24-26) – would be an unwarranted extension of the exception to encompass a safety regulation concerning motor carriers rather than one concerning motor vehicles.

For these reasons, the Court concludes that Plaintiff's negligent brokering claim against AGS is not saved from federal preemption by the safety regulatory exception of § 14501(c)(2)(A).

IT IS THEREFORE ORDERED that Defendant AG Source, Inc.'s Motion to Dismiss Plaintiff's Amended Complaint [Doc. No. 44] is GRANTED. The action against

Defendant AG Source, Inc. is dismissed, and the case shall proceed against only Defendants Raul Salazar d/b/a RAS Trucking and Robiet Leon Carrazana.

IT IS SO ORDERED this 20th day of September, 2019.

TIMOTHY D. DeGIUSTI
Chief United States District Judge