IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GREGORY LOYD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-977-D |
| | ) |
| RAUL SALAZAR d/b/a RAS TRUCKING, *et al.*, | ) |
| | ) |
| | ) |
| Defendants. | ) |

### **O R D E R**

Before the Court is Defendants Raul Salazar d/b/a RAS Trucking and Robiet Leon Carrazana's *Daubert* Motion to Exclude Plaintiff's Expert Testimony [Doc. No. 76], filed pursuant to Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993). Defendants challenge the proposed testimony of two medical experts designated by Plaintiff: Dr. J. Patrick Livingston, M.D. and Dr. L. Todd Olsen, D.O. Plaintiff has filed a timely response [Doc. No. 90] in opposition to the Motion, and Defendants have replied [Doc. No. 92]. The Motion is fully briefed and at issue.[1]

### **Factual Background**

This negligence action concerns Plaintiff's personal injuries from a motor vehicle accident. The underlying facts are fully set forth in the Order of December 7, 2020 [Doc. No. 96], denying summary judgment to Defendants. As pertinent here, it is undisputed that

---

[1] Defendants have filed a separate motion to exclude expert testimony by a treating physician (Dr. Brett Barnes), which is addressed by a separate order.

Plaintiff received serious injuries in the accident that required emergency medical treatment, surgery, hospitalization, inpatient rehabilitative care, and outpatient physical and occupational therapy. Over the course of his treatment, Plaintiff has undergone both surgical repair of multiple right ankle and leg fractures and surgical removal of some hardware that was implanted. Dr. Livingston evaluated Plaintiff and reviewed his medical records in May 2018, and provided opinions regarding Plaintiff's medical conditions and treatment, his prognosis and future medical needs, and permanent disability. Dr. Olsen examined Plaintiff in January 2020 and discussed potential treatment options for persistent ankle and foot pain. Defendants do not dispute that Dr. Livingston and Dr. Olsen are qualified to provide expert opinions regarding these matters but, instead, contend the doctors' opinions are unhelpful (Dr. Livingston) and speculative (Dr. Olsen) and, thus, inadmissible.

## Standard of Decision

Rule 702 codifies the Supreme Court's decision in *Daubert*, sets forth the standards for admissibility of expert opinions, and defines the trial court's gatekeeper role. As explained by the Tenth Circuit:

> Under Rule 702, the district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony. In determining whether expert testimony is admissible, the district court generally must first determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion. Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*.

*United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc) (internal quotations and citations omitted). When the testimony of an expert is challenged, the proponent of the testimony bears the burden of establishing its admissibility. *See id.*; *see also* Fed. R. Evid. 104(a).

## Discussion

Although Defendants seek to exclude Dr. Livingston's and Dr. Olsen's expert testimony under *Daubert*, Defendants do not challenge either doctor's qualifications or the underlying reasoning and methodology of their opinions. Defendants instead assert that Dr. Livingston's opinions are not based on sufficient facts because he lacked information regarding Plaintiff's subsequent treatment after May 2018. Defendants contend Dr. Livingston's opinions regarding Plaintiff's prognosis and degree of disability are irrelevant to Plaintiff's current condition because Dr. Livingston conducted his analysis and formed his opinions more than two years ago, before Plaintiff received additional surgical and rehabilitative care. Defendants contend Dr. Olsen's opinions lack a sufficient factual foundation and are speculative in that he merely discusses potential treatment options without determining whether any particular option is appropriate and without recommending a particular course of treatment.

As to Dr. Livingston, Plaintiff "concedes that Dr. Livingston cannot offer any opinions outside the scope of his report" but argues that Plaintiff's receipt of subsequent treatment does not render Dr. Livingston's expert opinions irrelevant or inadmissible. *See* Resp. Br. at 9. Upon examination of Dr. Livingston's report and the opinions stated in it, the Court agrees with Plaintiff. *See* Defs.' Mot., Ex. 2 [Doc. No. 76-2] at 8-9.

Specifically, the Court finds that trial testimony from Dr. Livingston regarding his expert opinions would be relevant to the anticipated issues. In his report, Dr. Livingston opines that 1) the accident caused Plaintiff to sustain serious injuries consisting of a sternal fracture and ankle/lower leg fractures that required surgical repair and ongoing treatment, 2) in May 2018, Plaintiff needed additional medical care, including a physiatric evaluation and aggressive physical rehabilitation, 3) Plaintiff's treatment to date had been reasonable, appropriate, and accident-related, 4) the implanted hardware should be removed after waiting six months for Plaintiff to complete his rehabilitation, 5) Plaintiff would be unable to return to his past work without adequate rehabilitation, 6) Plaintiff's "injuries are permanent in nature and will leave him with permanent functional loss and disability," but 7) it would be "premature" to rate Plaintiff's residual functional capacity. *See id*. at 9. On this issue, Dr. Livingston concluded only that "it is more likely tha[n] not that [Plaintiff] will require some degree of permanent restrictions such as unprotected heights, uneven ground, climbing ladders, and kneeling and squatting." *Id*.

The Court is not persuaded by Defendant's argument that Dr. Livingston's opinions are affected by Plaintiff's subsequent treatment. To the contrary, Dr. Livingston expressly recommended additional treatment and limited his opinions to then-available information. Overall, the Court finds that hearing Dr. Livingston's opinions would assist the jury in deciding the trial issues of causation and damages.

As to Dr. Olsen, Plaintiff argues that Dr. Olsen played a dual role as both a treating orthopedic physician and a medical expert regarding Plaintiff's prognosis and future medical needs. Like Dr. Livingston, Dr. Olsen evaluated Plaintiff's condition at a

4

particular point in time (January 2020) and addressed outstanding issues related to Plaintiff's ankle injury. Defendants state, correctly, that Dr. Olsen's report neither recommends that Plaintiff undergo a particular course of treatment nor reaches any conclusion about Plaintiff's condition. Dr. Olsen merely summarizes treatment options and possible procedures that might resolve Plaintiff's chronic pain and ankle stiffness.

Under the circumstances, however, the Court rejects Defendants' argument that Dr. Olsen's opinions are too speculative to have probative value. The document offered as Dr. Olsen's expert report summarizes his examination of Plaintiff for "[c]hronic right ankle pain." *See* Defs.' Mot., Ex. 4 [Doc. No. 76-4] at 1. After conducting a physical examination and obtaining x-rays, Dr. Olsen reached a diagnosis and formulated treatment options. Some options depended on further evaluation and testing, such as a nerve test (electromyography or EMG) to rule out tarsal tunnel syndrome; if that condition were found, a "tarsal tunnel surgical release" would be appropriate. *Id*. at 2. In other words, Dr. Olsen opined that additional diagnostic testing and consultation were needed. This is not a speculative opinion. Like Dr. Livingston. Dr. Olsen's opinions provide a snapshot of Plaintiff's continuing treatment at that point in time. The Court finds that Dr. Olsen's opinions are relevant and admissible to assist the jury in resolving issues of causation and damages.

Although generally admissible, the Court recognizes that the probative value of Dr. Livingston's and Dr. Olsen's expert opinions is limited by their temporal scope and subsequent developments in Plaintiff's medical and rehabilitative treatment. The Court finds, however, that the jury should be permitted to assess the medical experts' opinion

testimony in the context of other trial evidence. Defendants' arguments regarding certain opinions expressed by Dr. Livingston and Dr. Olsen go primarily to the credibility and weight to be given their testimony, which are matters to be determined by the jury. The trial testimony of Plaintiff's medical experts can properly be tested through the usual means of cross-examination, presentation of contrary evidence, and appropriate jury instructions.

## Conclusion

For these reasons, the Court finds that the expert opinions of Dr. Livingston and Dr. Olsen are admissible, subject to contemporaneous objections to particular testimony.

IT IS THEREFORE ORDERED that Defendants' *Daubert* Motion to Exclude Plaintiff's Expert Testimony [Doc. No. 76] is DENIED.

IT IS SO ORDERED this 5th day of March, 2021.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge