IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GREGORY LOYD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-17-977-D |
| | ) |
| RAUL SALAZAR d/b/a RAS TRUCKING, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**O R D E R**

Before the Court is Plaintiff's Motion for Sanctions for Defendants' Spoliation of Evidence [Doc. No. 108]. Plaintiff invokes federal common law and a district court's inherent authority to impose appropriate sanctions for litigation misconduct. *See Helget v. City of Hayes*, 844 F.3d 1216, 1225-26 & n.6. (10th Cir. 2017). Defendants Raul Salazar and Robiet Leon Carrazana have responded [Doc. No. 112] in opposition to the Motion, and Plaintiff has replied [Doc. No. 113]. The Motion is fully briefed and at issue.

This diversity case involves claims for personal injuries that Plaintiff suffered in a motor vehicle accident on December 24, 2016. Defendant Salazar (doing business as RAS Trucking) was a federally licensed motor carrier who employed the driver involved in the accident, Defendant Carrazana. Plaintiff claims that Carrazana's negligent operation of a semi-trailer truck caused the accident, that Carrazana's conduct was sufficiently reckless to warrant compensatory and punitive damages, and that Salazar has *respondeat superior* liability. Plaintiff also claims Salazar negligently entrusted the truck to Carrazana and

Salazar's own conduct warrants compensatory and punitive damages. Salazar has conceded vicarious liability for Carrazana's conduct. However, Defendants deny any negligence or basis for punitive damages, and assert that Plaintiff's own negligence caused his injuries. The case is set for jury trial on the Court's August 10, 2021 trial docket.

Plaintiff's Motion seeks the imposition of sanctions under a federal spoliation doctrine based on Salazar's destruction of records related to the accident and his trucking business. *See* Pl.'s Mot. Sanctions at 12-13. Plaintiff presents facts and evidence to show that approximately one month after the accident (on January 27, 2017), his attorney sent a litigation hold letter to Salazar's insurer that was communicated to Salazar, and within eight months (on August 15, 2017), counsel sent a more detailed preservation letter directly to Salazar and the claims adjuster. During discovery, however, Defendants have produced a total of four pages of documents: a two-page employment application for Carrazana and a copy of both sides of a commercial driver license issued after the accident. Records that were requested and are ordinarily retained include driver logs, trip documents (such as bills of lading, load permits, dispatch records, trip reports, and receipts), driver qualification records, vehicle maintenance files, and inspection reports. Federal motor carrier regulations require certain records to be maintained. Although Defendants responded to Plaintiff's document requests by stating that some records could not be located, Salazar testified during his deposition that he destroyed documents associated with the load Carrazana was hauling, including driver logbooks and dispatch records.

Defendants do not deny that records were destroyed. They assert that Plaintiff's Motion is untimely and that Plaintiff has not shown Salazar acted in bad faith or Plaintiff

2

was prejudiced by a loss of relevant evidence. Defendants seek to cast Salazar's conduct as innocent or mistaken – arguing that Salazar did not understand litigation responsibilities, instructions from the claims adjuster, or the preservation letter he received; that federal motor carrier regulations do not require some records to be retained after six months; and that he did not have the advice of counsel until September 2017. Defendants contend Salazar's deposition testimony shows memory lapses and miscommunications but not purposeful destruction of evidence. Defendants also challenge Plaintiff to identify any missing documents that are relevant to the trial issues.

## Standard of Decision

Plaintiff's Motion is not governed by Fed. R. Civ. P. 37, on which Defendants' untimeliness argument is based, but by a well-established common law doctrine. Rule 37 provides "substantial weaponry" to remedy an opponent's destruction of evidence, but a failure to utilize this rule leaves limited "sanctions available under a spoliation of evidence theory." *See Turner v. Pub. Serv. Co.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (quoting *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998)); *see 103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 988-89 (10th Cir. 2006) (district court granted trial-related motion for spoliation sanctions and struck witness testimony); *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206, 1219 (10th Cir. 2008) (spoliation issue decided by ruling on motion *in limine*).[1] Plaintiff seeks a trial-related remedy that may, or may not, be available

---

[1] "[T]he substantial weaponry in the district court's arsenal" under Rule 37 is available if a party or its officer or managing agent fails to obey a discovery order or fails to provide discovery. *See Mathis*, 136 F.3d at 1155; *see* Fed. R. Civ. P. 37(b)(2)(A), (d)(3).

3

under the circumstances.  "The district court has discretion to fashion an appropriate remedy depending on the culpability of the responsible party and whether the evidence was relevant to proof of an issue at trial."  *Estate of Trentadue ex rel. Aguilar v. United States*, 397 F.3d 840, 862-63 (10th Cir. 2005).

"Spoliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence."  *Turner*, 563 F.3d at 1149 (quoting *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007)). Where a movant seeks to remedy the alleged spoliation with an adverse inference that the destroyed evidence would have been unfavorable to the person responsible for its destruction, the movant "must also prove bad faith." *Id.*; *see Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997).  "Mere negligence in losing or destroying records is not enough because it does not support an inference of consciousness of a weak case." *Aramburu*, 112 F.3d at 1407.  An adverse inference jury instruction is a particularly powerful sanction because it "brands one party as a bad actor and necessarily opens the door to a certain degree of speculation by the jury, which is admonished that it may infer the presence of damaging information in the unknown contents" of a destroyed record. *Henning*, 530 F.3d at 1219-20 (internal quotation omitted).  "Without a showing of bad faith, a district court may only impose lesser sanctions."  *Turner*, 563 F.3d at 1149; *Henning*, 530 F.3d at 1220.

For a party to show he was prejudiced by a destruction of evidence, he must establish that the evidence was relevant. *Henning*, 530 F.3d at 1220.  In this context, the court of

4

appeals has declined to apply a blanket rule that certain evidence is always relevant in a particular type of case but, instead, has endorsed a "fact-specific inquiry." *Id*. at 1219. Only "bad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable" to the responsible party. *Aramburu*, 112 F.3d at 1407.

## Discussion

A.   **Spoliation of Evidence**

   1.   **Duty to Preserve Evidence**

It is undisputed that Salazar knew within three months after the accident, at the latest, that litigation would ensue. He was expressly told by his insurance claim adjuster to maintain records related to the accident. Thus, Salazar had a legal duty to preserve relevant evidence, regardless of whether he fully understood that duty.

   2.   **Prejudice from Destruction of Evidence**

Plaintiff complains that Salazar destroyed several categories of records that would have been helpful to his case – specifically, a driver qualification file, driver logbooks, and trip documents that are required by federal motor carrier regulations. *See* Pl.'s Mot. Sanctions at 19-23; *see also* 49 C.F.R. §§ 391.51, 395.8, 395.11.

   a.   **Driver Qualification File**

Plaintiff asserts that the driver qualification file is relevant to his claim that Salazar negligently entrusted Carrazana with a heavily loaded semi-trailer truck because the records in this file would show that Salazar did not fully investigate whether Carrazana was qualified to drive the truck he was operating at the time of the collision. Defendant

contends Plaintiff has failed to identify any record that would show Carrazana, a licensed commercial driver, was not qualified to operate the truck. Under the circumstances of this case, the Court finds that the driver qualification file is relevant to disputed trial issues, including Salazar's credibility regarding his investigation of Carrazana consistent with federal motor carrier regulations. Salazar testified in his deposition that, at one time, he had some of the required driver qualification records for Carrazana. If this is true, Salazar destroyed evidence of his investigation into Carrazana's qualifications; if it is false, a reasonable factfinder could infer that Salazar did not actually check Carrazana's qualifications. Either way, Salazar's destruction of the file is relevant to his veracity as a witness and Plaintiff's claim that he negligently entrusted Carrazana with the truck.

### b.   Driver Logbook and Trip Documents

Plaintiff asserts that the driver logbook "would have provided valuable insight into the circumstances surrounding the collision and Carrazana's condition at the time of the collision," and the trip documents would have allowed Plaintiff to reconstruct Carrazana's activities and determine the weight of his load. *See id*. at 22, 23. Plaintiff argues that the driver logbook would show Carrazana's hours of service and his alleged noncompliance with regulatory limits, and the trip documents would show "the extent to which Carrazana's trailer was overloaded." *See* Pl.'s Mot. at 20.[2] Plaintiff thus connects the logbook and trip

---

[2] Plaintiff points out that federal motor carrier regulations require commercial drivers to record their hours of service, driving activities, and other information, such as vehicle inspections. *Id*. at 20-21. The regulations limit drivers to 11 hours of driving in a 14-hour period and require rest breaks. *See* 49 C.F.R. § 395.3(a).

6

records in only a general way to his claim that Carrazana's negligent operation of the truck caused the collision.

Plaintiff does not address in his briefs a particular theory of Carrazana's negligence. Plaintiff previously argued in opposition to Salazar's motion for summary judgment that Carrazana was inexperienced and not trained for driving in heavy fog, which was a factor in the accident. *See* 12/7/20 Order [Doc. No. 96] at 7. The summary judgment record showed that Carrazana received a traffic citation for executing an improper turn and violating the vehicle weight limit, and that he later pled guilty to the weight violation. *Id*. at 5. However, Plaintiff has not explained – either then or now – how an overweight load contributed to the accident. Plaintiff also has not argued that the collision was caused by driver fatigue or unsafe equipment.[3]

Upon consideration, the Court finds itself unable to conclude on the present record that Plaintiff was prejudiced by Salazar's destruction of Carrazana's logbook and trip documents. It is logical to believe these documents would provide helpful information about Carrazana's conduct and his vehicle, particularly in light of Carrazana's lack of recall and vague testimony during his deposition. However, Plaintiff has not articulated a theory of relevance that permits a conclusion that the loss of the logbook and trip documents will

---

[3] Carrazana testified in his deposition that he was hauling a load of sand from Midland, Texas, to Weatherford, Oklahoma, and he began the trip before sunrise on the date of the accident. The collision occurred shortly after 9:00 a.m. near Snyder, Oklahoma. *See* Defs.' Resp. Br., Ex. 1 [Doc. No. 112-1], Official Okla. Traffic Collision Report. The distance from Midland to Snyder by road is approximately 300 miles. *See* Distance Between Cities, https://www.distance-cities.com/distance-snyder-ok-to-midland-tx. Plaintiff does not explain how these facts support a driver out-of-service finding, nor has Plaintiff mentioned any equipment failure.

prejudice the presentation of his case at trial. Plaintiff does not attempt to show that a particular document is relevant to any disputed trial issue or that the destruction of a document deprived him of pertinent proof. His categorical argument – that logbooks and trip documents are always relevant in a trucking accident case – is contrary to Tenth Circuit precedent. *See Henning*, 530 F.3d at 1219 ("district court did not err in finding the [dispatcher] tapes were not relevant" in train accident case). The Court therefore finds that, at this point, Plaintiff has not established prejudice from Salazar's destruction of Carrazana's driver logs and the trip documents. *Id*. at 1220 ("Without proving relevance, . . . [plaintiff] could not show she was prejudiced" by railroad company's destruction of dispatcher tapes.).[4]

### 3. Bad Faith Conduct

Plaintiff presses for a finding that Salazar willfully destroyed records in bad faith based on his disregard of repeated admonitions from the insurance claims adjuster, Plaintiff's counsel, and presumably his own attorney, to preserve documents related to the accident. Salazar offered no excuse during his deposition for destroying the driver logs and trip documents – answering such questions by saying only that federal regulations did not require him to keep them beyond six months. This answer is, of course, nonresponsive to the question of why he discarded litigation materials knowing an insurance claim had been made and litigation was coming. Salazar evaded questions about the driver qualification file (which he was required to keep for three years) by saying he could still

---

[4] Plaintiff's position on this issue may be clarified through his contentions in the Final Pretrial Report and by the evidence and arguments presented at trial.

8

have the documents somewhere and he needed to look for them. No driver qualification file was ever produced.

Defendants make no response to Plaintiff's assertion that Salazar destroyed the driver qualification file in bad faith. They make no excuse for its absence, and unlike Salazsar's destruction of driver logs and trip documents – which they attribute to a belief he could discard records subject to a six-month retention rule – Defendants offer no explanation of how Salazar could possibly have acted innocently or mistakenly. The Court therefore finds that, assuming the trial evidence is consistent with the current record, Plaintiff has shown a willful destruction of relevant records and bad faith conduct by Salazar regarding the driver qualification file. Further, Plaintiff is entitled to the benefit of an adverse inference at trial that the driver qualification file would have shown an incomplete investigation by Salazar of Carrazana's qualifications to drive a commercial vehicle like the one entrusted to him at the time of the collision.

**B.     Requested Sanctions**

Plaintiff lists a number of sanctions as proposed penalties for "Salazar's intentional and willful destruction of highly relevant, discoverable evidence after having received evidence preservation letters, after anticipating litigation, and during the pendency of this lawsuit." *See* Pl.'s Mot. Sanctions at 24. As discussed *supra*, a pretrial determination cannot be made that an adverse inference instruction is warranted based on the destruction of any documents other than the driver qualification file. If appropriate, Plaintiff may seek such a determination regarding driver logs and trip documents in the context of the trial issues and evidence.

Plaintiff also asks that Defendants be prohibited from using the missing documents "in any way as a defense" and that the Court should declare Carrazana was "out of hours" and the semi-trailer truck exceeded the applicable weight limit. *See* Mot. at 23-24; Reply Br. at 7-8. As to the first request, Plaintiff does not explain how Defendants could use missing documents in their defense. Defendants have filed a motion *in limine* asking the Court to prohibit Plaintiff's counsel from introducing at trial any "documentation issues" and Salazar's destruction of records. *See* Defs.' Mot. *In Limine* [Doc. No. 114] at 23. One must assume Defendants have no intention of opening the door to such evidence. Thus, the Court can discern no purpose to be served from a sanction instructing Defendants not to rely on the absence of records as a defense to Plaintiff's claims. Also, given the Court's finding that Plaintiff has not shown the relevance of driver logs and trip documents, the Court finds no basis to impose sanctions involving hours of service or an overweight load.

## Conclusion

For these reasons, the Court finds that a spoliation sanction should be imposed regarding Salazar's destruction of Carrazana's driver qualification file and that an adverse inference jury instruction is warranted if the trial evidence is consistent with the existing record. The parties are invited to submit a proposed jury instruction for the Court's consideration by July 26, 2021, the same date that the revised Final Pretrial Report is due. The Court further finds that a pretrial determination cannot be made that a spoliation sanction is appropriate regarding Salazar's destruction of driver logs and trip documents, and Plaintiff has not shown any other requested sanction is warranted.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Sanctions for Defendants' Spoliation of Evidence [Doc. No. 108] is **GRANTED IN PART**, as set forth herein.

**IT IS SO ORDERED** this 19th day of July, 2021.

TIMOTHY D. DeGIUSTI
Chief United States District Judge